UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| DIANE L. McCARTHY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SYSCO VIRGINIA, LLC, | ) |
| a Delaware limited liability company, | )   Civil Action No. 5:20-CV-<u>00085</u> |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

COMPLAINT
(Jury Trial Demanded)

The Plaintiff, Diane L. McCarthy ("McCarthy" or "Plaintiff"), by counsel, complaining of the Defendant Sysco Virginia, LLC, a Delaware limited liability company ("Sysco" or "Defendant"), alleges and says:

NATURE OF THE ACTION

1.   McCarthy, who was 65 years old when she was fired by Sysco, her employer for more than 23 years, brings this action for legal and equitable relief to correct and remedy her employer's unlawful employment practices, including in the discriminatory and retaliatory imposition and implementation of a series of performance improvement plans and the termination of her employment.  McCarthy brings this action to make her whole and compensate her for Sysco's violations of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.* (the "ADEA") and/or Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

1

## JURISDICTION AND VENUE

2.     Jurisdiction is founded in this case upon 28 U.S.C. §§ 1331, 1343, and 29 U.S.C. § 626(c)(1) and 42 U.S.C. § 2000e, *et seq*. The demand for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

3.     McCarthy was employed by Defendant Sysco for more than 23 years within this District and Division, and venue is proper within this District and Division pursuant to 28 U.S.C. § 1391(b) and (c).

## ADMINISTRATIVE PROCEEDINGS

4.     McCarthy timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) including the discrimination complained of herein on February 27, 2020. A true copy of the Charge is attached hereto marked Exhibit 1 and is incorporated herein by reference. The EEOC issued and mailed McCarthy a Dismissal and Notice of Rights letter dated August 26, 2020 informing her that she had 90 days from her receipt of the letter within which to file suit.

5.     McCarthy received the Dismissal and Notice of Rights letter on or after August 26, 2020 and has initiated this action within 90 days of the date that she received the letter.

6.     All administrative conditions precedent to the filing of this lawsuit have been performed or have occurred.

## PARTIES

7.     McCarthy is a female. She is 66 years old. At the time of the illegal termination of her employment complained of in this action, McCarthy was 65 years old. She is a citizen of the United States and a resident of Harrisonburg, Virginia.

8.     Defendant Sysco Virginia, LLC is a limited liability company organized and existing under the laws of the State of Delaware and is authorized to transact business in the Commonwealth of Virginia, with principal offices located on Route 11 South, Harrisonburg, Virginia. Sysco is, and at all times relevant to the matters alleged herein was, engaged in the

business of food service marketing and distribution to customers who prepare meals away from home, such as restaurants, hospitals, schools, institutions, and hotels.

9. At all times relevant to the matters alleged herein, Defendant Sysco was an employer engaged in an industry affecting commerce with more than 500 employees for each working day in each of twenty or more calendar weeks in each relevant calendar year and is an employer under and subject to the provisions of Title VII and the ADEA.

10. At all times relevant to the matters alleged herein, Defendant Sysco's agents and employees were acting during the course and within the scope of their employment or agency and with the knowledge and consent of Defendant Sysco.

## FACTS

11. McCarthy began working in sales for Sysco on or around May 6, 1996 as a Marketing Associate. She was employed by Sysco for approximately 23 ½ years until the discriminatory and retaliatory termination of her employment on November 21, 2019.

12. McCarthy enjoyed her work and had a strong sales performance history throughout her tenure with Sysco, which included receiving numerous recognitions as a top performer.

13. McCarthy performed at or above the level of her peers and met or exceeded Sysco's legitimate expectations of her.

14. In January 2019, Jay Thorpe, a white male approximately 40 years old who had been a sales colleague, was promoted to the position of District Manager for District D, the district in which McCarthy's sales territory was then located. In 2018, Ms. McCarthy had landed a large account with Harrisonburg's new hotel and convention center, and her growth in sales had been outstanding for the period just prior to Mr. Thorpe beginning as District Manager.

15. Almost immediately, Mr. Thorpe placed McCarthy on a Coaching Improvement Plan (CIP) identifying two specific goals with a 90-day timeline for completion. Mr. Thorpe

indicated that he was issuing CIP goals to all sales members of District D. This assertion was untrue. A CIP was given only to McCarthy and another sales colleague who was the same age as McCarthy.

16. McCarthy successfully completed the goals of the CIP within the allotted time period. Nonetheless, Mr. Thorpe issued another 90-day CIP with different specific goals designed to result in failure rather than as a method to improve performance.

17. McCarthy asked Mr. Thorpe why she was being subjected to the CIP's. Mr. Thorpe contended that McCarthy's territory was at the bottom of the District and that the bottom two territories were required to be on CIP plans. McCarthy asked what the criteria were for the "bottom" because her sales numbers did not place her territory in the bottom two in the district. Mr. Thorpe refused to provide the criteria he claimed were being used, and no information was available to the Marketing Associates to determine whether his statement was true, or what the criteria were for such a determination.

18. McCarthy's performance was consistent with or better than others in the District based on posted reports on weekly performance metrics on the webpage to which Marketing Associates had access. In May of 2019, her sales for fiscal year 2019 placed her solidly in the middle of the salespeople in the District. She was number 5 out of 10 or 11 Marketing Associates in District D.

19. In June 2019, McCarthy suffered a fall while working and fractured her kneecap. Despite the extent of her injury, she continued working her accounts from home, and was able to maintain her business accounts in her territory.

20. Due to the extent of her injury, though, McCarthy was not able to make weekly visits to all customers and prospects/new business. Sysco was aware of the limitations imposed on her by her injury.

21. Despite her injury, McCarthy continued to meet Sysco's legitimate expectations, but fell short on one of the goals for the CIP ending on June 30 due to her health condition and mobility restrictions of which Sysco, including Mr. Thorpe, was well aware. As a result, she was placed on another 90 day CIP with very specific goals to be accomplished by the end of September.

22. Had McCarthy not been on the discriminatory CIP in the first place, her performance would not have warranted another CIP.

23. McCarthy successfully completed the new goals.

24. When Mr. Thorpe met with McCarthy on September 27, 2019, he acknowledged that she had been successful for both goals.

25. Despite having successfully completed the CIP, Mr. Thorpe proceeded to give McCarthy a new CIP with one goal and a 30-day timeline. He told McCarthy that if she did not meet the goal by the end of the next month, she would be terminated.

26. The goal provided was designed to result in failure, but McCarthy had no choice but to sign the CIP. She objected to it being required at all, as well as about the CIP not providing for 90 days to achieve the goal. She further protested the 30-day timeline given that she had successfully completed the previous CIP goals.

27. McCarthy complained to the local human resources manager, Andy Breeding, about the unwarranted deadline, the continuing CIPs, and that they were discriminatory based on age. McCarthy reasonably believed that other older employees nearing retirement age being forced out of work through similar means.

28. The continuous CIPs were never a means of improving performance, but rather were designed to paper the file to support forcing McCarthy out of her job.

29. At the time of her complaint to Mr. Breeding, McCarthy was uncertain of the role of her gender with the imposition of the CIPs because she had observed other older sales associates who were similarly being managed out of their jobs. Additionally, though, the culture at Sysco and her gender also played a role in these actions, as did her gender and age combined.

30. The week following McCarthy's complaints of the discrimination, Mr. Thorpe purported to rescind his statement made on the previous Friday, in which he had admitted that McCarthy was on target for the CIP that ended September 27, 2019.

31. Mr. Thorpe denied that he had made the statement admitting that McCarthy was on target with her goals. Instead, he contended that he could not have made the statement (the one that he actually had made) because he did not have the final sales numbers on September 27, 2019 in order to have made such a determination about McCarthy being on target.

32. Mr. Thorpe's explanation was false and pretextual.

33. On October 3, 2019, Mr. Thorpe and the Regional Sales Manager, Ed Dymond, met with McCarthy to review the CIP and to insure that McCarthy understood what Sysco now was requiring of her given that Mr. Thorpe had agreed that she had met the goals, but Mr. Thorpe had subsequently changed his mind after she had complained of discrimination.

34. At that meeting, McCarthy was given a revised CIP that set out a specific number of cases of product she was required to sell during Sysco's period 4, which went from September 30, 2019 through October 25, 2019. McCarthy thus had only 22 days to complete this discriminatory and retaliatory CIP. The specific goal required her to sell 2895 cases of product by October 25, 2019. McCarthy achieved that new goal.

35. McCarthy sold 2970 cases of product during that new CIP period, exceeding the goal.

36. Despite having met the case sales goal, Sysco returned McCarthy to yet another discriminatory and/or retaliatory CIP. On October 29, 2019, Mr. Thorpe and Mr. Dymond met with McCarthy again. After advising McCarthy that she would have another CIP, this time for 30 days, Mr. Dymond told her that there was no way she was going to "move the needle" and that she would be unable to meet the CIP. Mr. Thorpe and Mr. Dymond set McCarthy up for failure and gave her this new CIP with the intention of using it as the basis for her termination.

37. McCarthy reviewed her personnel file on November 12, 2019 and discovered that the October 3, 2019 CIP had been altered. Sysco had changed the case sales goal on the CIP in her file to make it appear that McCarthy had not sold the requisite number of cases.

38. In her Charge of Discrimination filed with the Equal Employment Opportunity Commission, McCarthy asserted that Sysco had altered the CIP. Sysco failed to respond to that specific assertion.

39. Altering the CIP to remove the specific case sales goal was an attempt to make it appear falsely that McCarthy had failed to meet the goal when she had exceeded the stated case sales goal for that period.

40. The case sales expectations in the new CIP exceeded the company goal for significantly younger and/or male employees.

41. On November 18, 2019, McCarthy received an email scheduling her for an appointment with Mr. Thorpe for the CIP review on Thursday, November 21, 2019. Final sales numbers would not be available until late Monday or Tuesday of the following week.

42. Despite the goal being greater than required of significantly younger and or male employees, McCarthy once again met the case sales goal. However, Sysco refused to count cases sold to one of McCarthy's customers because it paid with an insufficient funds check, and as a result, the cases purchased by that customer were not shipped by Sysco until they were paid.

43. Even with the discounted cases sold removed from her total, by November 21, 2019, McCarthy came within about 1.15% (38 cases) of meeting Sysco's discriminatory and/or retaliatory goal.

44. Mr. Thorpe and Andy Breeding met with McCarthy on November 21, 2019 at 4:45 p.m. Prior to the meeting, Sysco blocked McCarthy from access to her Sysco email account. Mr. Thorpe then terminated McCarthy from her employment, falsely claiming that she had not met her CIP goal and that Sysco should have fired her in October 2019. He repeated that Mr. Dymond had forecast that McCarthy would not meet the most recent CIP goal.

45. Subtracting the sales of the one customer who had paid with a bad check, McCarthy had come within 38 cases of the unreasonable, discriminatory and retaliatory goal set by Mr. Dymond.

46. Mr. Thorpe told McCarthy that she had missed the final goal by 316 cases, or nine times what her actual performance revealed. Mr. Thorpe, again, made a false statement about her performance.

47. Sysco fired McCarthy before having the "final numbers." In fact, the numbers Sysco did have showed that McCarthy was extremely close to meeting the goal Sysco had set, so it terminated her before final numbers were obtained.

48.     Sysco also refused to consider McCarthy's performance over a quarter which showed significant increase in all of her sales metrics and far exceeded the sales numbers of many of the younger and/or male Marketing Associates in McCarthy's District.

49.     Prior to firing McCarthy, Sysco hired a young woman in late 20's or early 30's and began introducing that woman to McCarthy's customers and former customers, thereby undermining McCarthy's customer and prospective customer relationships.

50.     McCarthy is informed and believes that Sysco transferred many of McCarthy's customers to the young woman upon McCarthy's termination. The young woman had no experience as a Marketing Associate for a large food distributor such as Sysco or in the food distribution industry.  Thereafter, Sysco continued to seek to hire Marketing Associates in McCarthy's territory.

51.     Sysco implemented a metric of year over year sales percentage growth with respect to McCarthy, rather than total or even average sales, and limited the CIP in October 2019 to 30 days in an attempt to make the goal unattainable and to manufacture grounds on which to terminate McCarthy's employment.

52.     McCarthy's average weekly sales of $44,000 exceeded those of salespeople Sysco designated as the top five "super achievers," whose average weekly sales stood at only $31,000.

53.     Sysco implemented the year-over-year sales metric for McCarthy to justify the discriminatory CIPs that Sysco created to hide the true reasons for McCarthy's termination which were her sex and/or age, or alternatively both together.

54.     The year-over-year increase would have changed dramatically in December 2019 for McCarthy based on her 2018 and 2019 sales numbers.  Had Sysco waited another month, it

would have had no basis even under its discriminatory or retaliatory position to contend that McCarthy was subject to the CIP's.

55. Sysco also treated a male Marketing Associates more favorably than McCarthy in the imposition of performance standards or requirements. For example, at least one male employee in McCarthy's District failed to meet the new customer requirements imposed on McCarthy, and he further had far lower average sales and other metrics than McCarthy, but he was not terminated.

COUNT I-Violations of the ADEA
(Disparate Treatment)

56. McCarthy incorporates by reference and realleges the foregoing paragraphs 1-55 as if fully set forth here.

57. At the time of the termination of McCarthy's employment, McCarthy was 65 years old.

58. McCarthy was an employee of Sysco and was protected from discrimination and harassment under the ADEA.

59. The reasons for placing McCarthy on the CIP, and for the termination of Plaintiff's employment, were pretext. The true reasons were discriminatory and because of Plaintiff's age and thereby violated her rights to equal employment opportunity as protected by the ADEA. Plaintiff was subjected to adverse employment actions by Defendant because of her age.

60. Sysco utilized selection criteria for whom to terminate as employees that disparately treated employees age 40 and older, including McCarthy, when compared to similarly situated and/or lesser qualified and performing younger workers.

61. McCarthy was terminated from her employment despite her experience, skill, seniority, satisfactory performance, positive attitude, overall interest in the job and compliance with Sysco's policies for over two decades.

62. Defendant Sysco intentionally and willfully discriminated against McCarthy because of her age.

63. As a consequence of Defendant Sysco's intentional discrimination, McCarthy has lost wages and other financial incidents and benefits of employment, and McCarthy will continue to suffer such losses.

64. As a consequence of Defendant Sysco's intentional age discrimination, McCarthy has incurred and will continue to incur attorneys' fees, costs, and expenses of litigation.

## COUNT II-Disparate Impact Violation of the ADEA

65. McCarthy incorporates by reference and realleges the foregoing paragraphs 1-64 as if fully set forth here.

66. Defendant Sysco's selection process for imposition and implementation of its CIP plan caused a significant disparate impact on older workers in the protected class of employees over the age of 40.

67. Although McCarthy was well qualified for and satisfactorily performed her job, as a direct and proximate result of Defendant Sysco's selection process, McCarthy was selected to receive multiple CIP's, and later was terminated for the pretextual reason that she had not met the requirements of the CIP's when she had done so.

68. As a direct and proximate result of Defendant Sysco's selection criteria and/or selection process for the CIP's and for termination imposed on older employees, which had a disparate impact upon older workers, McCarthy has suffered and/or continues to suffer lost wages and benefits, and other damages, and losses otherwise prayed for herein.

## COUNT III-Violations of the ADEA
### (Retaliation)

69. McCarthy incorporates by reference and realleges the foregoing paragraphs 1-68 as if fully set forth here.

70. In September 2019, McCarthy complained to Sysco's human resources officer of conduct by Sysco's sales manager, Jay Thorpe, that was based on her age in relation to the implementation and imposition of repeated CIP's.

71. Because of her complaint of age discrimination, Mr. Thorpe rescinded his statement to McCarthy that she had been on-target for a prior period's CIP goals, the result of which should have been that she came off of the CIP program before the end of September 2019.

72. McCarthy reasonably believed that Sysco was discriminating against her because of her age when she complained to HR.

73. At some time after the October 3, 2019 revised CIP was given to McCarthy, Mr. Thorpe altered the case sales goal to make it appear, albeit falsely, that McCarthy had not attained a case sales goal which she actually had attained. This alteration then was used as a basis to set up a new goal that was designed specifically to make it appear that McCarthy had failed and that was used as a basis for termination of her employment.

74. Defendant Sysco intentionally and willfully retaliated against McCarthy for having opposed conduct made unlawful by the ADEA.

75. As a consequence of Defendant Sysco's intentional retaliation, McCarthy has lost wages and other financial incidents and benefits of employment, and McCarthy will continue to suffer such losses.

76. As a consequence of Defendant Sysco's intentional retaliation, McCarthy has incurred and will continue to incur attorneys' fees, costs, and expenses of litigation.

<u>COUNT IV-Violations of Title VII</u>
<u>(Sex Discrimination)</u>

77. Plaintiff incorporates by reference and realleges the foregoing paragraphs 1-76 as if fully set forth here.

78. McCarthy was an "employee" of Defendant Sysco within the meaning of Title VII, 42 U.S.C. § 2000e(f).

79. Defendant Sysco was and is an employer engaged in an industry affecting commerce with 15 or more employees for each working day in each of twenty or more calendar weeks in each relevant calendar year, and Defendant Sysco was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b) at all times relevant to the matters alleged herein.

80. McCarthy was experienced, skilled and proficient as a Marketing Associate, and she was performing at a higher level than male counterparts, including Mike Slowinski, but she was terminated from her long-time job with Sysco that she had been performing extremely well.

81. Defendant Sysco discriminated against McCarthy in selecting her for the CIP program, and then terminating her employment because of her sex, and further discriminated against Plaintiff with respect to the terms and conditions of her employment in violation of Title VII, including by terminating her employment based on sex.

82. Defendant Sysco's conduct was disparate, intentional, deliberate, and willful. Defendant Sysco engaged in the practices complained of herein with malice and or with such reckless indifference to Plaintiff's federally protected rights that she is entitled to the recovery of punitive damages.

83. As a result of Defendant Sysco's discrimination based on sex, McCarthy has suffered emotional and economic harm.

84. By reason of Defendant Sysco's sex discrimination, McCarthy has suffered damages and is entitled to all legal and equitable remedies available under 42 U.S.C. § 2000e, *et seq.,* including, but not limited to, declaratory and injunctive relief, back pay, compensatory damages, punitive damages, reinstatement into a position she would be holding but for Defendant Sysco's discriminatory conduct (or, alternatively, front pay), and any other legal or equitable relief as the Court deems appropriate.

<u>COUNT V-Violations of Title VII and/or the ADEA</u>
<u>(Sex Plus Age Discrimination)</u>

85. Plaintiff incorporates by reference and realleges the foregoing paragraphs 1-84 as if fully set forth here.

86. McCarthy was an "employee" of Defendant Sysco within the meaning of Title VII, 42 U.S.C. § 2000e(f) and the ADEA.

87. Defendant Sysco was and is an employer subject to both Title VII and the ADEA.

88. McCarthy was experienced, skilled and proficient as a Marketing Associate, and she was performing at a higher level than her male counterparts, but she was terminated from her long-time job with Sysco that she had been performing extremely well.

89. Defendant Sysco discriminated against McCarthy in selecting her for the CIP program, and then in terminating her employment because she is an older woman, that is because of her sex plus age, and Sysco further discriminated against Plaintiff with respect to the terms and conditions of her employment in violation of Title VII and/or the ADEA, including by imposing and implementing the CIP's and by terminating her employment based on being an older female.

90. Defendant Sysco's conduct was disparate, intentional, deliberate, and willful. In the alternative, Defendant Sysco's conduct had a disparate impact on McCarthy because of her sex plus age.

91. As a result of Defendant Sysco's discrimination based on sex plus age, McCarthy has suffered emotional and economic harm.

92. By reason of Defendant Sysco's sex plus age discrimination, McCarthy has suffered damages and is entitled to all legal and equitable remedies available under 42 U.S.C. § 2000e, *et seq.,* and/or the ADEA, including, but not limited to, declaratory and injunctive relief, back pay, compensatory damages, punitive damages, reinstatement into a position she would be holding but for Defendant Sysco's discriminatory conduct (or, alternatively, front pay), and any other legal or equitable relief as the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Diane L. McCarthy demands judgment against Defendant Sysco Virginia, LLC, as follows:

(a) For a declaration that the acts and practices complained of herein are in violation of Plaintiff's rights as secured by the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.*, and/or Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*;

(b) For an order reinstating Plaintiff to her position with Defendant Sysco, or in a position with comparable duties and responsibilities and with equal pay and benefits as Plaintiff would have received but for Defendant Sysco's conduct in violation of the ADEA and/or Title VII, and reinstating all benefits to which Plaintiff would have been entitled but for the illegal imposition of the CIP's and the termination of her employment, or in the alternative for an award of front pay and future benefits;

(c) For a permanent injunction enjoining Defendant Sysco from any conduct violating Plaintiff's rights as secured by the ADEA and/or Title VII;

(d) For an award of back pay, prejudgment interest, and appropriate recovery for lost employment benefits and other affirmative relief as may be appropriate, and for all other wages and benefits denied or lost;

(e) For an award of liquidated damages under the ADEA;

(f) For an award of compensatory damages under Title VII in an amount to be determined by the jury;

(g) For an award of punitive damages under Title VII in an amount to be determined by the jury;

(h) For an award of reasonable attorneys' fees and costs incurred in this action, together with expert witness fees and expenses;

(i) For an award in an amount necessary to offset the adverse tax consequences of an award received in a lump sum;

(j) For an award of post-judgment interest on any monetary award; and

(k) For any other relief this Court deems to be just and proper.

PLAINTIFF DEMANDS TRIAL BY JURY pursuant to Fed. R. Civ. P. 38.

                                           DIANE L. McCARTHY

                                     By:  s/Timothy E. Cupp
                                             Counsel

Timothy E. Cupp, VSB No. 23017
Shelley Cupp Schulte, P.C.
1951 Evelyn Byrd Avenue, Suite D
PO Box 589
Harrisonburg, Virginia 22803
(540)432-9988
(804)278-9634 (facsimile)
E-mail:  cupp@scs-work.com

Tim Schulte, VSB No. 41881
Shelley Cupp Schulte, P.C.
3 West Cary Street
Richmond, Virginia 23220
(804)644-9700
(804)278-9634
Schulte@scs-work.com
*Counsel for Plaintiff*